## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| State of Minnesota, by its Attorney General Keith Ellison,<br><br>      Plaintiff,<br><br>v.<br><br>John Johnson, in his official capacity as President of the L.D.F. Business Development Corporation Board of Directors,<br><br>      Defendant. | Court File No.:<br><br><br><br>**COMPLAINT** |

The State of Minnesota by its Attorney General Keith Ellison ("the State" or "the Attorney General"), alleges as follows against Defendant John Johnson, in his official capacity as President of the LDF Business Development Corporation Board of Directors and described further herein ("Defendant"):

1.     This is a civil law enforcement action brought by the Minnesota Attorney General to stop illegal and predatory lending in Minnesota by online businesses controlled and operated by LDF Holdings LLC including: Anong LLC dba AvailBlue, Biboon LLC dba Bridge Lending, Niizh LLC dba Bright Star Cash, Niibin LLC dba Cash Aisle, Opichi LLC dba Evergreen Services, Makwa LLC dba Makwa Finance, Niiwin LLC dba Lendgreen, Niizhwaaswi LLC dba Loan at Last, Niswi LLC dba Lendumo, Ishwaaswi LLC dba RadiantCash, Ningodwaaswi LLC dba Sky Trail Cash, and Ziibi LLC dba zFunds (together, "the LDF Lenders"). Defendant is President of the L.D.F. Business Development Corporation ("LDF BDC") Board of Directors and controls and determines policies and

operations of LDF Holdings LLC and its lending through the LDF Lenders pursuant to that position, and is named solely in that official capacity.

2.     LDF Holdings LLC has made thousands of online installment loans (through the LDF Lenders) to consumers in Minnesota bearing interest rates between 200% and 800%. These loans, which are generally under $3,000 and targeted at consumers in desperate financial circumstances, are illegal and void under Minnesota usury laws.

3.     LDF Holdings LLC purports to shield its lending business from responsibility for this illegality by citing the sovereignty of its owner, a federally recognized Native American tribe. LDF Holdings LLC represents to consumers in Minnesota that the out-of-state status of its tribal owner and operation of tribal law allow it to market and demand payment on usurious loans, avoid compliance with Minnesota law, and leave consumers with no redress or ability to assert legal rights in Minnesota court. But the truth is that out-of-state businesses and businesses incorporated under the laws of other sovereigns must comply with Minnesota law when transacting business in Minnesota. Simply put, those that do business in Minnesota cannot evade Minnesota laws by operating online or including contract provisions purporting to waive operation of Minnesota consumer-protection statutes.

4.     Accordingly, loans made in Minnesota by LDF Holdings LLC through the LDF Lenders are illegal, and representations about consumers' obligations and rights are deceptive and unfair.

5.     LDF Holdings LLC also claims that, even if its predatory loans are illegal, the tribal owner's sovereign status prevents the business from being subject to legal

process. But several court rulings addressing this form of predatory online lending in recent years have held that, while sovereign nations may be immune from paying monetary penalties, they are *not* exempt from judicial injunctive authority. In accordance with that precedent and the sovereignty of LDF Holdings LLC's tribal owner, the Attorney General seeks only declaratory and injunctive relief. The Attorney General seeks only to enforce its laws, including usury prohibited by Minnesota's civil and criminal code, and to stop further violations and harm to financially distressed Minnesota consumers.

## PARTIES

6.    Keith Ellison is Attorney General of the State of Minnesota and authorized under Minnesota Statutes chapter 8; the Minnesota Consumer Fraud Act, Minn. Stat. § 325F.68-70 ("MCFA"); the Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.44-45 ("UDTPA"); the False Statement in Advertising Act, Minn. Stat. § 325F.67 ("FSAA"); the Minnesota Regulated Loan Act, Minn. Stat. ch. 56 ("MRLA"); the Consumer Short-Term Loan Law, Minn. Stat. § 47.601; common law, including *parens patriae* authority; and the Consumer Financial Protection Act, 12 U.S.C. § 5552(a) ("CFPA") to bring this action to enforce such laws, vindicate sovereign and quasi-sovereign interests, and prevent further violations and harm.

7.    John Johnson is named as Defendant solely in his capacity as President of the LDF BDC Board of Directors and controlling manager of LDF Holdings LLC, which controls and operates the LDF Lenders. His business address is 2640 Thorofare Road, PO Box 155, Lac Du Flambeau, WI 54538. LDF Holdings LLC is wholly owned by the Lac

du Flambeau Band of Lake Superior Chippewa Indians ("Waaswaaganing"), a federally recognized Native American tribe. As President of the LDF BDC Board of Directors and its operated business entities, Mr. Johnson is responsible for deciding all policies, customs, and general practices for the LDF Lenders. This action concerns Mr. Johnson only in his official capacity as President and controlling manager and shall automatically substitute any successor to Mr. Johnson as named official-capacity defendant.

## JURISDICTION AND VENUE

8.      The Court has federal-question jurisdiction under 28 U.S.C. §§ 1331 and 1337 because a claim is brought under the CFPA, a federal law, pursuant to 12 U.S.C §§ 5564(f) and 5552(a)(1). The Court has supplemental jurisdiction over claims brought under state law pursuant to 28 U.S.C. § 1367. The conduct underlying the state and federal law claims form the same case or controversy because the underlying conduct is substantially the same.

9.      Defendant transacts or does business in this District and/or is found in this District and thus subject to personal jurisdiction pursuant to 12 U.S.C §§ 5552(a)(1) and 5564(f), in addition to Minnesota's long-arm statute, Minn. Stat. § 543.19. Specifically, LDF Holdings LLC transacts business and committed acts in Minnesota causing injury to the public and in violation of Minnesota law, as detailed herein. If this were not an official-capacity action, personal jurisdiction would alternatively exist pursuant to the above statutes because of Mr. Johnson's contacts with and business in Minnesota and because Mr. Johnson participates in and controls a coordinated enterprise directed at and resulting

in harm in Minnesota. This Court may also enter a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 through 2202.

10.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in and because Defendant does business in this District.

## GENERAL ALLEGATIONS

11.    Since even before its statehood, the Minnesota Legislature has prohibited usury, making loans charging excessive interest void and providing liability for any person who makes or collects on such loans. While this general prohibition has always remained, the legislature in more recent years enacted specialized usury limits and restrictions for persons and entities engaged "in the business of making loans" and deemed as void loan contracts that violate that law. The legislature has also instituted special restrictions to guard against predatory "payday" and other consumer short-term loans and prohibited attempts to evade the law through deceptive contractual provisions. These laws are described in section I below.

12.    LDF Holdings LLC ignores these laws and has in recent years made many loans through the LDF Lenders to consumers in Minnesota at interest rates exponentially higher than what Minnesota law permits. They do so while deceiving Minnesotans into believing this lending business is immune from Minnesota law because LDF Holdings LLC is owned by Waaswaaganing, a federally recognized Native American tribe. But even sovereigns must comply with Minnesota and federal law when they transact business in

Minnesota. Consequently, LDF Holdings LLC has falsely represented that the LDF Lenders' loans are legal, not subject to Minnesota law, and require Minnesota consumers to repay principal and usurious interest.

13.     Minnesota continues to be harmed by these ongoing practices and respectfully requests injunctive relief to prevent further harm and uphold Minnesota's laws.

## I.    MINNESOTA'S USURY LAWS

14.     Usury laws—limits on interest and other fees that lenders can charge borrowers—are among the most fundamental consumer protections in American history. These laws are deeply rooted in the social and moral judgment of legislators that exploiting people with limited means through predatory money lending is unjust and harmful to the individual and society at large.

15.     Accordingly, since territorial times the legislature has maintained usury laws that prevent individuals and businesses from charging predatory interest. These laws have long protected Minnesotans facing financial problems from being exploited or misled into taking out credit products that deepen rather than relieve their distress.

16.     A general usury limit, long codified in chapter 334 of the Minnesota Statutes, caps annual interest at 8% for written contracts. Chapter 334 and Minnesota and federal banking laws, however, allow certain financial institutions to charge higher select rates subject to federal or state supervision and restrictions. Loans subject to chapter 334's general interest rate cap but that nonetheless charge rates exceeding 8% are void and have no legal effect by operation of section 334.03 and 334.05. The Minnesota Supreme Court

has also long held that usurious contracts are void as to the lender, who cannot collect principal or interest or assert other rights under illegal loan contracts.

17.    The legislature has further enacted special restrictions on so-called "payday" and similar forms of small-dollar, short-term credit. Such loans target consumers facing distress and immediate financial need and pose higher risks for exploitative practices and default—risks that have only increased as the market has increasingly moved online. Specifically, Minnesota's "consumer small loan" statute (section 47.60) was enacted in 1995 and applies to unsecured consumer loans up to $350 and scheduled to be repaid in a single installment. Minnesota's "consumer short-term loan" statute (section 47.601) was added in 2009 and applies to individuals and entities that make consumer loans up to $1,300 and that require payments within 60 days of more than 25% of the original balance.[1]

18.    Sections 47.60 and 47.601 require subject lenders to be licensed or registered and allow annual interest rates up to either 50% or 36% (the former may be charged if the lender assesses an ability to repay the loan). They also prohibit certain contract terms that prevent consumers from asserting rights under Minnesota law, including those "selecting a law other than Minnesota law under which the contract is construed or enforced" or that "choos[e] a forum for dispute resolution other than the state of Minnesota." The statutes

---

[1] The 2023 Minnesota Legislature amended these statutes to eliminate certain fees for consumer small loans and short-term loans and replace that framework with the 50% annual interest limit. It also raised the threshold for consumer short-term loans from $1,000 to $1,300. 2023 MINN. LAWS ch. 57, art. 3.

further require disclosure of fees, interest, and other information. Consumer-short-term lenders must file additional reports to the Department of Commerce.

19.    Subdivision 6 of the "consumer short-term loan" law (section 47.601) voids any consumer short-term loan not in compliance with interest-rate limitations and licensing requirements. For such loans, "the borrower is not obligated to pay any amounts owing."

20.    Subdivision 5 of the consumer-short-term-loan law (section 47.601) provides that a loan "is deemed to take place in the State of Minnesota if the borrower is a Minnesota resident and the borrower completes the transaction, either personally or electronically, while physically located in the state of Minnesota." This coincides with general Minnesota caselaw holding that businesses that market and extend loans to consumers in Minnesota via the internet to be subject to Minnesota laws.

21.    In addition to the above laws, Minnesota generally requires that businesses engaged "in the business of making loans" up to $100,000 and above the general usury cap of 8% hold a license from the Department of Commerce and abide by interest-rate caps of either 21.75% annual percentage rate[2] on the entire loan or 33% a year for the first $1,350 and 19% for the remainder. Any loan contract that violates these requirements is void and the debtor is not obligated to pay any amounts owing. Carrying on a predatory lending business in violation of chapter 56 is also a gross misdemeanor under section 56.19.

---

[2] "Annual percentage rate" or "APR" is the yearly cost of borrowing calculated as a percentage of a loan's original principal. The rate includes interest charged on outstanding balances, origination fees, and other finance charges in the annualized calculation; thus, it is a more accurate reflection of the costs of borrowing than simply referring to a loan's annual "interest" rate, though the terms are often used interchangeably.

22.    Minnesota has a strong sovereign interest in enforcing these consumer protections. According to the American Community Survey, nearly 9% of Minnesotans in 2021 were living below the poverty line, with nearly one third of Minnesotans that identify as American Indian/Alaska Native (31%) or Black/African American in poverty.[3] Minnesotans increasingly report difficulty paying for basic needs, including increasing costs for food, gas, and housing.[4] Usury laws provide basic protection from lenders that would exploit Minnesotans needing to pay for such basic needs. Loans with exorbitant interest can trap borrowers in cycles of costly borrowing and repayment that worsen their overall financial condition.[5]

23.    Minnesota law has also traditionally recognized the important policy served by usury limits. Lending above the general usury rate without being subject to licensing restrictions is subject to criminal penalties under chapter 56. The Minnesota Supreme Court has also held that a lender charging rates exceeding 500% on "wage earners who are forced by necessitous circumstances … to borrow small sums of money" constitutes a public nuisance.

---

[3] Angela R. Fertig, *Minnesota Poverty Report 2022*, MINN. COMMUNITY ACTION P'SHIP & HUMPHREY SCHOOL OF PUBLIC AFFAIRS (Mar. 7, 2022); *People in Poverty in Minnesota*, Minn. Dep't of Health, https://data.web.health.state.mn.us/poverty_basic; John Creamer et al, *Poverty in the United States: 2021*, UNITED STATES CENSUS Bureau (Sep. 2021).

[4] Ben Horowitz & Alene Tchourumoff, *Higher Prices & Job Struggles: The Challenges Many Ninth District Households Face*, FEDERAL RESERVE BANK OF MINNEAPOLIS (Feb. 8, 2023).

[5] *Market Snapshot: Consumer Use of State Payday Loan Extended Payment Plans*, CONSUMER FINANCIAL PROTECTION BUREAU (2022).

24.    Accordingly, after the legislature's enactment of the short-term loan statute (section 47.601), the Attorney General brought numerous enforcement actions against illegal online small-dollar lenders that were violating Minnesota's laws.[6]

## II.    LDF HOLDINGS LLC'S PREDATORY AND ILLEGAL LENDING IN MINNESOTA

25.    LDF Holdings LLC has falsely marketed and extended loans through the LDF Lenders at exorbitant interest rates to Minnesota consumers in violation of the above usury laws. These deceptive and illegal business activities target and harm financially

---

[6] *State by Swanson v. Global Payday Loan, LLC*, No. 27-CV-10-6381 (Minn. 4th Dist. July 20, 2010) (default judgment ordered online lender to pay $100,000 and cease lending or collecting on loans to Minnesota residents until it complied with Minnesota law); *State by Swanson v. Jelly Roll Financial, LLC*, No. 19HA-CV-10-1703 (Minn. 1st Dist. Oct. 7, 2010) (consent judgment required online lender to pay $15,000 and cease lending to Minnesota residents until it complied with Minnesota law); *State by Swanson v. Eastside Lenders, LLC*, No. 19HA-cv-10-1075 (Minn. 1st Dist. Nov. 17, 2010) (consent judgment required online lender to pay $50,000 and cease lending to Minnesota residents until it complied with Minnesota law); *State by Swanson v. Silverleaf Mgmt.*, No. 33-cv-11-305 (Minn. 10th Dist. Mar. 28, 2012) (consent judgment required online lender to pay $46,000 and cease lending to and collecting on any outstanding loans from Minnesota residents until it complied with Minnesota law); *State by Swanson v. Upfront Payday, LLC*, No. 33-cv-11-306 (Minn. 10th Dist. Apr. 2, 2012) (consent Judgment required online lender to pay $21,500 and cease lending to and collecting from Minnesota residents until it complied with Minnesota law); *State by Swanson v. Flobridge Group, LLC*, No. 62-cv-11-7171 (Minn. 5th Dist. June 11, 2012) (consent judgment required online lender to pay $34,000 and cease lending to Minnesota residents until it complied with Minnesota law); *State by Swanson v. Sure Advance, LLC*, No. 27-CV-11-18350 (Minn. 5th Dist. Nov. 16, 2012) (consent decree required online lender to pay $760,000 and cease lending to and collecting from Minnesota residents until it complied with Minnesota law); *State by Swanson v. Integrity Advance, LLC*, No. 62-cv-11-7168 (Minn. 5th Dist. May 31, 2014) (findings of fact and conclusions of law ordering payment of $7,705,308 and enjoining online lender from lending to and collecting from Minnesota residents until it complied with Minnesota law); *State by Swanson v. CashCall, Inc.*, No. 27-cv-13-12740 (Minn. 4th Dist. Aug. 17, 2016); (consent judgment required online lender to pay $4,500,000 and cease lending to and collecting from Minnesota residents until it complied with Minnesota law).

distressed Minnesotans and undermine Minnesota's laws and the lenders that comply with those laws.

### A. LDF Holdings LLC Engages in Lending in Minnesota Through the LDF Lenders' Trade Names and in Coordination with Nontribal Actors.

26.    LDF Holdings LLC was incorporated in 2012 to operate online lending businesses in Minnesota and other states. It does so through the various business entities and trade names identified in paragraph 1 above, but LDF Holdings LLC states that it "owns and manages the entire online lending business" related to the LDF Lenders.

27.    LDF Holdings LLC is owned by the LDF BDC, an entity created under tribal law. It is "a business entity" created "for [the] purpose of engaging, through subsidiary entities [i.e., the LDF Lenders], in the business of making small-denomination, short-term loans to consumers ('Internet Lending Business')." LDF Holdings LLC "is the sole Member" of the "subordinate entities"—i.e., the trade names and LLCs identified as "the LDF Lenders" in paragraph 1.

28.    For example, Loan at Last was incorporated in 2013 with an address at 418 Little Pines, PO Box 155, Lac du Flambeau, WI 54538. Its original statutory agent was the LDF BDC, Chief Operating Officer Brent McFarland, PO Box 67, Lac du Flambeau, WI 54538. Loan at Last was formed "to engage in the business of operating one or more Tribal Lending business[es]." Also incorporated in 2013 were Sky Trail Cash and RadiantCash. Also, zFunds was formed in 2020.

29.     While the LDF Lenders are owned by LDF Holdings LLC, nontribal entities and actors appear to play a coordinated and substantial role in managing illegal lending operations and collecting revenue from loan repayments. For example:

    a.  the original sole manager of Loan at Last was a company called Triax Management LLC located at 5787 West Sunrise Boulevard, Plantation, FL 33313. LDF Holdings LLC has stated that Triax Management was "the management company that LDF Holdings LLC was utilizing to help grow their lending business" and that LDF Holdings LLC's former manager Jessi Lee Lorenzo "worked for Triax Management" before "Coming to LDF Holdings LLC in January 2017."

    b.  In 2020, Ms. Lorenzo on behalf of LDF Holdings LLC designated Mark Koetting of MRC Consulting LLC as agent for Among LLC and to work with debt collectors on behalf of Anong LLC dba Avail Blue.

    c.  TrueAccord is a debt collector located in Lenexa, KS and licensed with the Minnesota Department of Commerce to collect debts in Minnesota. TrueAccord entered agreements with Avail Blue in 2020, Radiant Cash in 2017, Loan at Last in 2020, and zFunds in 2020. The contracts provide for TrueAccord to retain a percentage of collections as its fees.

**B.    LDF Holdings LLC Markets to Minnesotans Facing Financial Need and Has Made Thousands of Small Loans to Such Consumers in Minnesota.**

30.     LDF Holdings LLC markets to Minnesota consumers online via its LDF Lender websites and social media, where Minnesota residents located in Minnesota visit the website and view their marketing. LDF Holdings LLC also directs mailings of flyers and other print marketing for the LDF Lenders to Minnesota residents' addresses.

31.     This marketing steers consumers in Minnesota to quickly apply for loans on the LDF Lender websites and receive loan disbursements within hours. It does so by directing consumers to apply for loans from the LDF Lender websites (the websites use phrases like "it's quick and easy" and "apply in minutes"), get pre-approved (the websites

say "in minutes" or "in seconds"), and obtain loan proceeds (the websites say consumers can "receive funds in just a few hours" or "as soon as the next business day").

32.     The original principal for the loans made by the LDF Lenders are generally under $2,000 and often under $1,000. The LDF Lenders' websites identify different maximum amounts for new loans, including $600 for Evergreen Services, $750 for Avail Blue, $1,000 for zFunds, and $1,200 for Loan at Last.

33.     The payment structure for these loans requires that a Minnesota consumer repay a minimum of 25% or more of the original principal balance within 60 days of origination.

34.     Payments are generally collected via ACH withdrawals from a borrower's bank account in Minnesota.

35.     The LDF Lender websites identify states in which they do not do business. As stated on one of the LDF Lender websites: "There are some states where our tribal loans are not available …. Please check our availability and rates page to find out if you are in a state that we can serve."

36.     The lists of states in which LDF Lender loans "are not available" has included Arkansas, Colorado, Connecticut, Georgia, Illinois, Maine, Maryland, Massachusetts, Montana, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Oregon, Pennsylvania, Vermont, Virginia, Washington, West Virginia, and Wisconsin, as well as the District of Columbia. As discussed in section III below, some of the LDF Lender websites were just recently changed to now include Minnesota to their lists of excluded states.

37.     To obtain a loan from an LDF Lender, Minnesota consumers would fill out the online application and identify their Minnesota address and other personal information. The application has listed "Minnesota" in the drop-down menu of states in which the LDF Lenders would make loans:





38.     Consumers would then review and electronically sign loan contracts in Minnesota. They would receive an email confirmation from the LDF Lender and receive

funds deposited into their bank accounts in Minnesota. Some LDF Lender websites also state that they "require a phone call with [the LDF Lender's] customer service team."

39.     The LDF Lender websites state that marketed loans are "[f]or people who need[] emergency funding."

40.     Accordingly, Minnesota consumers report taking out loans from the LDF Lenders during periods of extreme financial distress.

### C.     LDF Holdings LLC's Loans Charge Predatory Interest Rates.

41.     Loan and other information received and reviewed by the Attorney General's Office show that LDF Holdings LLC routinely charges Minnesota borrowers annual interest rates between 200 and 800%, if not more, on loans originated through the LDF Lenders. For example, AvailBlue loans charged between 611 and 871%; Bridge Lending loans charged between 305 and 605%; Cash Aisle loans charged between 769 and 784%; Lendumo loans charged between 300 and 795%; Makwa Finance loans charged between 500 and 795%; Loan at Last loans charged 308%; and Radiant Cash loans charged between 520 and 742%.

42.     Many Minnesota consumers do not understand the high cost and repayment schedule for the LDF Lender loans. Consumers report being shocked to learn of the loans' extremely high cost and their resulting inability to pay off the debt as planned.

43.     The interest charged on every one of LDF Holdings LLC's loans marketed and originated through the LDF Lenders vastly exceed the rate allowed under Minnesota's usury laws described in section I above.

**D.    LDF Holdings LLC Falsely Demands a Right to Repayment on Void Loans and Misrepresents that Minnesota Law Does Not Apply.**

44.    LDF Holdings LLC, through its control and operation of the LDF Lenders, calls and emails Minnesota consumers in Minnesota to demand repayment when ACH transfers are ineffective. Such repayment demands often cause severe financial distress for Minnesota consumers with fixed incomes, requiring difficult choices between repaying the loans or paying necessary household bills.

45.    Upon learning of the rate charged on LDF Holdings LLC's loans, Minnesota customers report misunderstanding and confusion as to whether the loans are legal.

46.    Consumers, however, reasonably believe that they must repay the loans or face adverse legal consequences and derogatory reporting of the loans' status to credit reporting agencies. The loan contracts state that the LDF Lender has the right upon default to "declare all principal, finance charges and other amounts that you owe us to be immediately due and payable in full" and may then "[d]ebit [the consumer's] Bank account or debt card, as applicable, for the full amount you owe us."

47.    The loan documents state that, upon default and acceleration of the balance, the LDF Lender "may submit" the borrower's information "[t]o a collection agency" or "report the incident to a consumer reporting agency database," which will "negatively impact" the consumer's credit rating and "ability to write checks or to receive loans or advances from other companies."

48.    The loan documents state that the LDF Lender may "pursue all legally available means to collect what you owe us."

16

49. The LDF Lender websites further state: "[i]f you fail to repay your loan in accordance with its terms, we may place your loan with or sell your loan to a third-party collection agency or other company that acquires and/or collects delinquent consumer debt."

50. When customers express to LDF Holdings LLC that they cannot afford to make loan payments and excessive interest charged on their loans, LDF Holdings LLC falsely instructs them that the amount is enforceable and must be repaid.

51. LDF Holdings LLC further entered into contracts for the LDF Lenders with debt collectors to demand payments from Minnesota borrowers concerning defaulted loans. This includes collection agreements signed with TrueAccord Corp. and LDF Lenders, including Avail Blue in June 2020, Radiant Cash in May 2020, Loan at Last in May 2020, and ZFunds in May 2020. TrueAccord is a nontribal corporation headquartered in Kansas and organized under the laws of Delaware. It has been licensed to conduct debt collection in Minnesota by the Minnesota Department of Commerce since 2015.

52. The contracts with TrueAccord provide for referral of loan accounts with "amounts due and owing," and state that the LDF Lenders will refer those accounts "for collection services" to TrueAccord. TrueAccord agreed to "pursue … collection efforts, primarily through email" to Minnesota consumers, "in an effort to achieve a full recovery of the balance." The contracts include provisions for TrueAccord to "make every effort to collect accounts" and "mak[e] recommendations to file suits on such accounts."

53.    For just three of the LDF Lenders (Loan at Last, ZFunds, and Avail Blue), TrueAccord was referred 308 loans for Minnesota consumers with collection balances totaling $302,444.32. TrueAccord collected $174,129.87 on these loans through 2022.

**E.    LDF Holdings LLC Includes Contract Provisions and Makes Other Statements Falsely Disclaiming Minnesota Law and Purporting to Limit Borrower Rights.**

54.    When consumers or the Attorney General's Office express to LDF Holdings LLC that consumers' loans and interest rates appear to be illegal, LDF Holdings LLC responds that Minnesota law does not apply to their loans.

55.    The loan documents for the LDF Lenders' loans also include several provisions waiving Minnesota law and otherwise limiting consumers' rights to challenge the repayment demands, including provisions that:

      a.    disclaim Minnesota law and apply only the laws of the tribal owner to disputes or issues concerning the loan:

**GOVERNING LAW:** The laws of the Tribe and applicable federal law will govern this Agreement, without regard to the laws of any state or other jurisdiction, including the conflict of laws rules of any state. You agree to be bound by Tribal law, and in the event of a bona fide dispute between you and us, Tribal law and applicable federal law shall exclusively apply to such dispute.

      b.    prevent consumers from asserting legal claims against the LDF Lender:

respect to either your Agreement or your Disbursement and Payment Choice Authorization. As set forth below, the Tribe expressly preserves its sovereign immunity and you may not assert any claims against the Tribe. As an economic development arm and instrumentality of the Tribe, we

      c.    require the consumer to assert any dispute to the company itself for resolution first:

complaints made by or on behalf of our consumers. A consumer who, in the course of his or her otherwise lawful and proper use of our business, has concerns about the operation of any part of us or who otherwise believes himself or herself to be aggrieved by some aspect of any part of our operation shall direct his or her concerns in the first instance to our management, in writing at customerservice@ldfcallcenter.com or by mail at P.O. Box 231, Lac du Flambeau, WI 54538. A

    d.   prevent the LDF Lender or related entities from being liable "in any court in any jurisdiction, or any other forum":

WE, AS A WHOLLY OWNED ECONOMIC DEVELOPMENT ARM, INSTRUMENTALITY, AND LIMITED LIABILITY COMPANY OF THE TRIBE, AND OUR DIRECTORS, OFFICERS, AND EMPLOYEES ACTING WITHIN THE SCOPE OF THEIR AUTHORITY, ARE NOT SUBJECT TO SUIT IN ANY COURT IN ANY JURISDICTION, OR ANY OTHER FORUM, ABSENT A WAIVER OF SOVEREIGN IMMUNITY. In order

    e.   require arbitration and waiver of any action in Minnesota court:

**YOU AGREE TO THE TERMS OF THIS ARBITRATION PROVISION AND YOU HEREBY AGREE AND ACKNOWLEDGE THAT YOU ARE WAIVING YOUR RIGHT TO HAVE A COURT RESOLVE ANY DISPUTE ALLEGED AGAINST US OR RELATED THIRD PARTIES.**

    f.   waive the constitutional right to a jury trial:

<u>**WAIVER OF JURY TRIAL**</u>**: BY SIGNING THIS AGREEMENT, YOU HEREBY AGREE AND ACKNOWLEDGE THAT YOU ARE WAIVING YOUR RIGHT TO HAVE A TRIAL BY JURY TO RESOLVE ANY DISPUTE ALLEGED AGAINST US OR AGAINST A RELATED THIRD PARTY.**

    g.   waive the ability to participate in a class action or bring an action in the capacity as a "private attorney general":

<u>**CLASS-ACTION/REPRESENTATIVE WAIVER**</u>**: BY SIGNING THIS AGREEMENT, YOU HEREBY AGREE AND ACKNOWLEDGE THAT YOU ARE WAIVING YOUR RIGHT TO PURSUE OR PARTICIPATE IN REPRESENTATIVE CLAIMS AND YOU THEREFORE WILL NOT BE ALLOWED TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY, AND/OR TO PARTICIPATE AS A MEMBER OF A CLASS OF CLAIMANTS, IN ANY LAWSUIT FILED AGAINST US AND/OR RELATED THIRD PARTIES. THEREFORE, THE ARBITRATOR SHALL NOT CONDUCT CLASS ARBITRATION; THAT IS, THE ARBITRATOR SHALL NOT ALLOW YOU TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY FOR OTHERS IN THE ARBITRATION.**

56.    LDF Holdings LLC similarly includes fine print on the LDF Lender websites stating that their "[l]oans … are governed by Tribal law." LDF Holdings LLC states on its website that its lending operations are "in full compliance" with applicable law.

57.    When the Attorney General's Office contacts LDF Holdings LLC in response to complaints, LDF Holdings LLC responds—including in letters signed by LDF Holdings LLC's former manager Jessi Lee Lorenzo—that Minnesota law does not apply to the loans and that the loans are legal.

58.    When the Minnesota Department of Commerce contacts LDF Holdings LLC, LDF Holdings LLC similarly responds—including letters signed by Ms. Lorenzo—that the loans "are not subject to state law" and that "the customer's loan is legal."

59.    For example, one letter from LDF Holdings LLC to the AGO stated that the LDF Lender at issue was "wholly owned and operated subsidiary of LDF Holdings, LLC" and that "[n]either the Tribe nor [LDF Holdings LLC] are subject to state law." Ms. Lorenzo also stated that the predatory interest rates are legal because "[t]he customer's loan agreement provided that it would be governed by the laws of the Tribe, without regard to the laws of any state" and that "[t]he interest and fees applicable to the loan are permitted by Tribal law." Another letter from LDF Holdings LLC similarly states to the borrower that, "[d]ue to its immunity, the loan is not subject to state law and the [LDF Lender] is not required to be licensed with any state. Your loan is legal."

**F. Despite Recent Enforcement by the State, LDF Holdings LLC Continues to Collect on Existing Illegal Loans and Appears to Originate New Loans for Through of the LDF Lenders.**

60.     In October 2023, the Attorney General's Office filed a civil enforcement lawsuit against predatory online lenders associated with a different tribal-owned business called the Island Mountain Development Group. *Minnesota by Ellison v. Azure*, Compl. No. 23-cv-03321, Dkt. 1 (D. Minn. Oct. 30, 2023) ("*Azure*"). Shortly after *Azure* was filed, the parties entered into a consent order whereby the lenders agreed to cease originating new loans that violated Minnesota law and stopped repayment and collection on existing illegal loans. *See id*., Order, Dkt. 46 (D. Minn. Feb. 27, 2024).

61.     After the State filed *Azure*, some of the LDF Lender websites started identifying Minnesota as a state in which they would no longer extend new loans. Namely, Bridge Lending, Evergreen Services, Loan at Last, Makwa Finance, and zFunds currently state on their websites that they will not lend in Minnesota. However, as of June 12, 2024, AvailBlue does not include Minnesota on its list of excluded states.

62.     Regardless of whether every LDF Lender stopped listing Minnesota as a state in which it originates new loans, LDF Holdings LLC has collected on existing illegal loans that were originated before the change.

63.     LDF Holdings LLC also continues to maintain, in correspondence to the Attorney General's Office and on the LDF Lender websites, that their loans are not subject to consumer-protection laws of the borrower's state.

### III.   Injunctive Relief is Necessary to Stop Ongoing Violations of Minnesota Law that Harm Minnesota.

64.    Collection on predatory loans poses continuing harm to Minnesota. As noted above, TrueAccord was referred 308 loans for Minnesota consumers with collection balances totaling $302,444.32 for just three of the LDF Lenders. This does not include collections for loans through other LDF Lenders (including the most active lender, Lendumo), collections through other debt collectors, or loans not subject to default.

65.    The Attorney General's Office has also received many complaints that document extreme hardship caused by LDF Holdings LLC's continuing demands for payment of excessive interest.

66.    For example, **K.R.** of Burnsville took out a $1,397.99 loan from Lendumo in December 2023 that he later learned charged a 795% interest rate. With interest added to the loan, its balance eventually snowballed to $8,593.33. After the Attorney General's Office became involved and demanded that Lendumo stop collection, it responded that "the loan is not subject to state law" and "the customer's loan is legal" before proceeding to demand an additional $389.02 on the loan after applying past payments to the principal balance "as a courtesy."

67.    Another example is **D.K.** of Austin, who reported that she was signed up for "a payday loan for $500 from Lendumo.com" in March 2023 and "[b]ecause of the stress I was in at the time, I didn't understand that under the terms of the loan I would be paying 200% interest." **D.K.** reported that she was "62 years old and a vulnerable adult and on disability" at the time she was signed up for the loan, which she could not repay. The loan's

balance increased to $1,860 by May 2023. **D.K.** contacted the Attorney General's Office concerning the loan and expressed confusion about whether such high interest was legal. When the Attorney General's Office demanded that Lendumo stop collection, Lendumo responded that it was "not subject to state law" and "the customer's loan is legal." It then stated that "as a courtesy" it would require an additional payment of $500 to close the account.

68. Many other consumer reports match the experiences of **K.R.** and **D.K.**

69. If **K.R.**, **D.K.**, and other consumers had not contacted and received assistance from the Attorney General's Office, they would still be subject to oppressive interest, ballooning loan balances, and continuing demands for burdensome repayment driving them further into poverty. It is indeed possible that tens of thousands of Minnesota borrowers who have not contacted the Attorney General's Office have been subject to predatory loans by the LDF Lenders and that many such borrowers face continued repayment demands.

70. Minnesota consumers that LDF Holdings LLC made illegal loans to were harmed, including by being subjected to payment demands and debt collection for exorbitant interest and being falsely compelled to repay loan balances that were, in truth, void and uncollectible under Minnesota law.

71. LDF Holdings LLC's conduct also undermines Minnesota's sovereign interests in enforcing its laws, preventing wrongful and harmful business conduct, protecting the economic security of Minnesota residents, ensuring a sound and fair

marketplace for financially distressed consumers with diminished bargaining power, and preventing unfair competition against businesses that comply with Minnesota law.

72.    Attempts to evade usury laws to exploit consumers are not new. Predatory lenders have long attempted various schemes and legal artifices to evade Minnesota's usury laws. One common avoidance scheme involves short-term lenders entering agreements with federally recognized tribes whereby the tribe's sovereignty is used to claim immunity from state consumer-protection laws. Those who facilitate these schemes make statements in their marketing and communications to consumers intending to make consumers believe that their state's laws do not apply.

73.    LDF Holdings LLC's statements that their loans are legal and that Minnesota laws do not apply are false. The U.S. Supreme Court has repeatedly recognized that the sovereign immunity of tribal nations does not prevent the substantive application of laws where tribal-owned entities engage in business activity in a state that would otherwise be subject to that state's regulation.

74.    Nor can a person evade compliance with Minnesota law by claiming state laws do not apply. Contractual devices in form contracts signed by consumers do not validate otherwise void loans made in violation of civil or criminal laws. For this reason, numerous circuit courts have recognized that short-term loans made by online and tribal-affiliated lenders are subject to state laws when the lender steps beyond its tribal borders and makes loans to consumers in that state.

75.    Thus, the substantive laws of Minnesota apply to tribal entities that do business in the State even if tribal nations are subject to sovereign immunity from suit in

federal and state courts. It is well-established—most notably in a 1908 U.S. Supreme Court decision in a case brought against the Minnesota Attorney General, *Ex Parte Young*, 209 U.S. 123 (1908)—that officials acting in control of a sovereign entity may be subject to civil suits *for injunctive relief* to prevent further or ongoing violations. In fact, the U.S. Supreme Court has specifically held that states may seek *Ex Parte Young* relief against tribal officials who transact unlawful business outside of tribal lands.

76.    Accordingly, the Attorney General seeks injunctive relief to stop further illegal lending and false and misleading conduct by LDF Holdings LLC in Minnesota. And, as discussed above, while the LDF Lenders appear to have ceased offering new loans to Minnesota consumers, injunctive relief is provided under section 8.31 to prevent further violations and to require that new illegal lending activity does not resume through those LDF Lenders. It is also necessary to stop further collections and harm on existing illegal loans, ensure effective monitoring and enforcement, and otherwise ensure prospective compliance.

## COUNT I
## General Usury
## Minn. Stat. ch. 334

77.    The Attorney General incorporates by reference paragraphs 1 through 76.

78.    Section 334.01 sets the general usury rate cap in Minnesota as 8% per annum on written loan contracts under $100,000. The rate cap under section 334.01 applies unless another rate applies for businesses supervised and regulated under Minnesota or federal law. *See, e.g.*, Minn. Stat. § 334.01, subd. 3 (contracts governed by ERISA), § 334.011

(business and agricultural loans), §§ 334.02 & 334.03 (exempting financial institutions and regulated lenders subject to section 47.59, section 48.196, sections 56.01-56.19, and federal banking supervision); § 47.59 (setting rates for certain state-regulated or -supervised financial institutions).

79.    Defendant (including his predecessors), in his official capacity managing LDF Holdings LLC and in control of the LDF Lenders, violated chapter 334 because LDF Holdings LLC directed and issued loans subject to the chapter that charge(d) and collect(ed) egregious annual interest rates between 200 and 800%. Such loans are subject to the 8% usury rate under chapter 334 because the LDF Lenders are not licensed, registered, or otherwise supervised and regulated by federal or Minnesota agencies.

80.    Under section 334.02 and 334.05, all loans issued by LDF Holdings LLC through the LDF Lenders in Minnesota are void *ab initio*. Minnesota consumers who were extended such loans have no obligation to repay the loan or be subject to collection.

81.    Defendant (including his predecessors), in his official capacity decided, adopted, and/or ratified the policies of LDF Holdings LLC related to the operations of the LDF Lenders in violation of chapter 334.

82.    These violations are ongoing: some LDF Lenders continue to market new loans under $100,000 to Minnesota consumers at egregious and blatantly unlawful interest rates while all LDF Lenders continue to demand repayment from Minnesota consumers and engage in debt collection from Minnesota consumers on illegal loans. Minnesota and its residents have been and continue to be harmed by these violations of chapter 334.

83.     The Attorney General is entitled to bring civil actions to enforce chapter 334 pursuant to Minn. Stat. § 8.31 and common law *parens patriae* authority.

84.     Because LDF Holdings LLC is owned by Waaswaaganing, a federally recognized tribe subject to sovereign immunity, the Attorney General brings this action for declaratory and injunctive relief only—in order to secure effective prospective relief to stop continuing and future violations of the law. In recognizing these principles of sovereign immunity, however, the Attorney General reserves the right to contest whether Waaswaaganing is the de facto lender concerning such loans and to pursue other relief against non-tribal entities or persons that have participated in the unlawful lending described herein.

## COUNT II
### Usury for Lending Businesses
### Minn. Stat. §§ 56.01-56.19

85.     The Attorney General incorporates by reference paragraphs 1 through 76.

86.     Chapter 56 of the Minnesota Statutes provides that "no person shall engage in the business of making loans" with an initial balance of less than $100,000 and "charge, contract for, or receive" interest that is more than what is allowed if the person was not a "licensee under this chapter." Minn. Stat. § 56.01. This prohibition applies "to any person who, by any device, or pretense, shall charge, contract for, or receive greater interest … than is authorized by [chapter 56]." Minn. Stat. § 56.18.

87.     In other words, lending businesses that wish to make loans above the 8% general usury cap under chapter 334 (and are not regulated by Minnesota or federal authorities as a bank, savings association, trust company, licensed pawnbroker, or credit

union) must obtain a lending license from the Department of Commerce. Section 56.131 then allows those regulated lenders to issue loans at higher but still limited interest rates set forth under Minn. Stat. § 47.59 (which is either an overall rate of 27.75% or a blended rate of 33% for principal under $1,350 and 19% for amounts above $1,350). If the lender is not licensed, loans they issue above the general usury cap are illegal and void under section 56.19 (in addition to chapter 334).

88.     The Attorney General is Minnesota's chief law enforcement officer and authorized to bring civil actions to enforce chapter 56's usury prohibition for lending businesses under section 8.31 and *parens patriae* authority. *See State by Swanson v. Minnesota Sch. of Bus., Inc*., 899 N.W.2d 467 (Minn. 2017) (holding that the Attorney General may enforce and pursue injunctive relief for violations of chapter 56).[7]

89.     Defendant (including his predecessors), in his official capacity managing LDF Holdings LLC and in control of the LDF Lenders, violated chapter 56 because loans issued by the LDF Lenders in Minnesota are under $100,000, originated by an unlicensed lending business, and charge interest rates well above the general usury cap.

90.     The LDF Lenders are not licensed under chapter 56, nor are they banks, savings associations, trust companies, licensed pawnbrokers, credit unions, or other entities doing business under and as permitted by Minnesota or federal law. But even if the LDF

---

[7] The Minnesota Department of Commerce has authority to bring administrative actions as licensor for regulated lenders. *See* Minn. Stat. §§ 56.21, 45.027. But the Attorney General has independent and concurrent authority to enforce chapter 56 as the State's chief law officer. *State ex rel. Hatch v. Am. Fam. Mut. Ins. Co*., 609 N.W.2d 1, 4 (Minn. Ct. App. 2000).

Lenders did hold a lending license, they would still violate section 56.131's usury limit for lending businesses because the interest rates on their loans are much higher than those permitted for licensees under section 47.59.

91.    As a result of these violations, all loans issued by the LDF Lenders in Minnesota are void. Pursuant to section 56.19, borrowers on such loans are under no obligation to pay any amounts demanded related to those loans.

92.    Defendant (including his predecessors) in his official capacity decided, adopted, and/or ratified the policies of LDF Holdings LLC related to the operations of the LDF Lenders in violation of chapter 56.

93.    These violations are ongoing: as of July 2024, some LDF Lenders were continuing to market new loans under $100,000 to Minnesota consumers at egregious and blatantly unlawful interest rates while all LDF Lenders continue to demand repayment from Minnesota consumers and engage in debt collection from Minnesota consumers on illegal loans. Minnesota and its residents have been and continue to be harmed by these violations of chapter 56.

94.    Because LDF Holdings LLC is owned by Waaswaaganing, a federally recognized tribe subject to sovereign immunity, the Attorney General brings this action for declaratory and injunctive relief only—in order to secure effective prospective relief to stop continuing and future violations of the law. In recognizing these principles of sovereign immunity, however, the Attorney General reserves the right to contest whether Waaswaaganing is the de facto lender concerning such loans and to pursue other relief

against non-tribal entities or persons that have participated in the unlawful lending described herein.

## COUNT III
### Consumer Short-Term Loan Statute
### Minn. Stat. §§ 47.601

95.     The Attorney General incorporates by reference paragraphs 1 through 76.

96.     Section 47.601 guards against the worst practices in high-risk, low-dollar lending by restricting individuals and entities engaged in the business of making "consumer short-term loans." The statute prohibits contracts that purport to displace or render inapplicable the protections of Minnesota law, requires that lenders provide complete copies of lending contracts and disclose necessary information about such loans, requires compliance with Minnesota debt-collection laws, sets special interest-rate limits that are more generous than other laws but prevent predatory charges, and requires reporting to the Department of Commerce.

97.     Section 47.601, subdivision 6(b), renders void any consumer short-term loan issued by a consumer short-term lender who is not properly licensed, includes contract terms prohibited under the statute, or charges interest in violation of limits set forth under either Minn. Stat. § 47.59, subd. 6 (capping charges for loans made by regulated financial institutions) for loans issued before 2024 or Minn. Stat. § 47.60 (setting charges for consumer small-loan lenders) for loans issued starting in 2024.

98.     Subdivision 7 authorizes the Attorney General to bring civil actions to enforce section 47.601. The Attorney General is also authorized to enforce the law pursuant to section 8.31 and *parens patriae* authority.

30

99.    The LDF Lenders' loans are subject to section 47.601 because:

a.    many if not most of the loans issued through the LDF Lenders in Minnesota have initial principal balances under $1,000 or, for loans made on or after January 1, 2024, principal balances under $1,300;

b.    the loans are made to borrowers for personal, family, or household purposes;

c.    the repayment schedules require high weekly or biweekly payments from the borrower equal to at least 25% of the initial principal balance within 60 days of the loan's origination;

d.    the LDF Holdings LLC and the LDF Lenders are "an individual or entity engaged in the business of making or arranging consumer short-term loans" and do not lend through "a state of federally chartered bank, savings bank, or credit union"; and

e.    the loans are not transactions made under chapter 325J or loans where, in the event of default on the loan, the sole recourse for recovery of the amount owed, other than a lawsuit for damages for the debt, is to proceed against physical goods pledged by the borrower as collateral for the loan.

100.    Defendant (including his predecessors), in his official capacity for LDF Holdings LLC and in control of the LDF Lenders, violated section 47.601 because all loans issued through the LDF Lenders have (a) required borrowers to sign a contract with "a provision selecting a law other than Minnesota law under which the contract is construed or enforced," in violation of subdivision 2(a)(1); (b) required borrowers to sign a contract with "a provision choosing a forum for dispute resolution other than the state of Minnesota," in violation of subdivision 2(a)(2); (c) been issued by lenders that did not file reports with the Department of Commerce for each calendar year that documents amounts collected, average APRs, number of borrowers, number of borrowers with 5 to 20 or more loans, and the number of loans charged off, in violation of subdivision 4, and (d) charged

rates exceeding those allowable under both section 46.60, subdivision 2 or section 47.59, subdivision 6.

101.  Pursuant to section 47.601, subdivision 6(b), all loans issued by LDF Holdings LLC through the LDF Lenders are void because LDF Holdings LLC failed to "obtain[] an applicable license," the loans include impermissible contract provisions as detailed above, and the loans charge impermissible rates of interest.

102.  Defendant (including his predecessors), in his official capacity decided, adopted, and/or ratified the policies of LDF Holdings LLC related to the operations of the LDF Lenders in violation of the section 47.601.

103.  These violations are ongoing: as of July 2024, some LDF Lenders were continuing to market new loans subject to and in violation of section 47.601 to Minnesota consumers while all LDF Lenders continue to demand repayment from Minnesota consumers and engage in debt collection from Minnesota consumers on loans in violation of section 47.601.

104.  Because LDF Holdings LLC is owned by Waaswaaganing, a federally recognized tribe subject to sovereign immunity, the Attorney General brings this action only for declaratory and injunctive relief to secure effective prospective relief to stop continuing and future violations of the law. In recognizing these principles of sovereign immunity, however, the Attorney General reserves the right to contest whether Waaswaaganing is the de facto lender concerning such loans and to pursue other relief against non-tribal entities or persons that have participated in the unlawful lending described herein.

## COUNT IV
## Minnesota Prevention of Consumer Fraud Act
## Minn. Stat. § 325F.69-.70

105.    The Attorney General incorporates by reference paragraphs 1 through 76.

106.    The MCFA, Minn. Stat. § 325F.69-.70, provides that the "act, use, or employment" by "any person" of "any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice" that is made "with the intent that others rely thereon in connection with the sale of any merchandise" is "enjoinable as provided in section 325F.70. The representation is actionable "whether or not any person has in fact been misled, deceived, or damaged thereby."

107.    As of August 1, 2023, section 325F.69 of the MCFA also prohibits any "unfair or unconscionable practice[s]."[8] 2023 Minn. Laws. ch. 57, art. IV, § 16. "Merchandise" under section 325F.69 includes "services" and "loans." Minn. Stat. § 325F.68, subd. 2.

108.    Section 325F.70 provides that "the attorney general … may institute a civil action in the name of the state in the district court for an injunction prohibiting any violation" of the MCFA. It further provides that the court, "upon proper proof that such defendant has engaged in a practice made enjoinable" by the MCFA, "may enjoin the future commission of such practice." The statute clarifies that it "shall be no defense to such an action that the state may have adequate remedies at law."

---

[8] The relevant time for the State's claim under Count IV for unfair or unconscionable practices under subdivision 1 of section 325F.69 began on August 1, 2023 and continues through the present.

109.    Defendant (including his predecessors), in his official capacity for LDF Holdings LLC and in control of the LDF Lenders, violated the MCFA because the LDF Lenders represented that consumers have a legal obligation to repay loans that are illegal and void under Minnesota law, falsely marketed the LDF Lenders' loans as legal credit products, sent correspondence to Minnesota consumers demanding payment, originated ACH debit entries from consumer bank accounts, conducted debt collection on Minnesota consumers, and demanded repayment on defaulted loans. These practices are misleading and unfair.

110.    The LDF Lenders also failed to disclose that consumers have no legal obligation to pay the loan amounts because they were void under state law. Consumers were and are unlikely to know that applicable law renders the LDF Lender loans void or limited consumers' obligation to repay.

111.    The above representations were misleading and made with the intent that others rely thereon in connection with the sale of loans to Minnesota consumers. Representations concerning the legal obligation of the consumer to repay or not repay are material terms or conditions meant to induce the borrower to believe the loans are legal, to induce consumers to make payments they are not obligated to make, and to prevent consumers from asserting rights under Minnesota law. These practices are unfair and misleading.

112.    The Attorney General is authorized to bring civil actions to enforce the MCFA under section 325F.70, section 8.31, and *parens patriae* authority.

113.     Defendant (including his predecessors) in his official capacity decided, adopted, and/or ratified the policies of LDF Holdings LLC related to the operations of the LDF Lenders in violation of the MCFA.

114.     These violations are ongoing: as of July 2024, some LDF Lenders were continuing to deceptively market new loans to Minnesota consumers while all LDF Lenders continue to make representations concerning repayment from Minnesota consumers and engage in debt collection from Minnesota consumers on illegal loans based on the above misrepresentations. Minnesota and its residents have been and continue to be harmed by these violations of the MCFA.

115.     Because LDF Holdings LLC is owned by federally recognized tribes and subject to sovereign immunity, the Attorney General brings this action for declaratory and injunctive relief only—in order to secure effective prospective relief to stop continuing and future violations of the law. In recognizing these principles of sovereign immunity, however, the Attorney General reserves the right to contest whether Waaswaaganing is the de facto lender concerning such loans and to pursue other relief against non-tribal entities or persons that have participated in the unlawful lending described herein.

**COUNT V**
**Uniform Deceptive Trade Practices Act**
**Minn. Stat. §§ 325D.44-.45**

116.     The Attorney General incorporates by reference paragraphs 1 through 76.

117.     The UDTPA, Minn. Stat. § 325D.44-.45, provides that a "person …. engages in a deceptive trade practice" when "in the course of business, vocation, or occupation,"

they: "cause[] likelihood of confusion or of misunderstanding as to the … approval[] or certification of goods or services," "represent[] that goods or services have … characteristics … that they do not have," or "engage[] in any other conduct which similarly creates a likelihood of confusion or of misunderstanding."  Minn. Stat. § 325D.44, subd. 1(2), (5), (14).[9]  Deceptive practices under section 325D.44 may be enjoined and "proof of monetary damage, loss of profits, or intent to deceive is not required."

118.    As of August 1, 2023, the UDTPA also prohibits "unfair or unconscionable acts or practices."[10] 2023 Minn. Laws. ch. 57, art. IV, § 6.

119.    Defendant (including his predecessors), in his official capacity for LDF Holdings LLC and in control of the LDF Lenders, engaged in violations of the UDTPA because the LDF Lenders represent that consumers have a legal obligation to repay loans that are illegal and void *ab initio* under Minnesota law, market their loans as legal credit products, send correspondence to Minnesota consumers demanding payment, originate ACH debit entries from consumer bank accounts, conduct debt collection on Minnesota consumers, and demand repayment on defaulted loans. These practices are misleading and unfair.

---

[9]  Pursuant to 2023 Minnesota Laws chapter 57, article 4, section 6, subdivision 1(13) of section 325D.44, prohibiting "engag[ing] in any other conduct which similarly creates a likelihood of confusion or of misunderstanding," was recodified as subdivision 1(14). For simplicity, the State refers to this provision as section 325D.44, subdivision 1(14).

[10]  The relevant time for the State's claim under Count V for unfair or unconscionable acts or practices under subdivision 1(13) of section 325D.44 began on August 1, 2023, and continues through the present.

120.    The LDF Lenders also fail to disclose that consumers have no legal obligation to pay the loan amounts because they were void under state law. Consumers were and are unlikely to know that applicable law renders the LDF Lenders' loans void or limited consumers' obligation to repay.

121.    Representations concerning the legal obligation of the consumer to repay or not repay are material terms or conditions meant to induce the borrower to believe the loans are legal, to induce consumers to make payments they are not obligated to make, and to prevent consumers from asserting rights under Minnesota law.

122.    The Attorney General is authorized to bring civil actions to enforce the UDTPA under section 325D.45, section 8.31, and *parens patriae* authority.

123.    Defendant (including his predecessors) in his official capacity decided, adopted, and/or ratified the policies of LDF Holdings LLC related to the operations of the LDF Lenders in violation of the UDTPA.

124.    These violations are ongoing: as of July 2024, some LDF Lenders were continuing to deceptively market new loans to Minnesota consumers while all LDF Lenders continue to make representations concerning repayment from Minnesota consumers and engage in debt collection from Minnesota consumers on illegal loans based on the above misrepresentations. Minnesota and its residents have been and continue to be harmed by these violations of the UDTPA.

125.    Because LDF Holdings LLC is owned by federal recognized tribes and subject to sovereign immunity, the Attorney General brings this action for declaratory and injunctive relief only—in order to secure effective prospective relief to stop continuing and

future violations of the law. In recognizing these principles of sovereign immunity, however, the Attorney General reserves the right to contest whether Waaswaaganing is the de facto lender concerning such loans and to pursue other relief against non-tribal entities or persons that have participated in the unlawful lending described herein.

## COUNT VI
### False Statement in Advertising
### Minn. Stat. §§ 325F.67

126.    The Attorney General incorporates by reference paragraphs 1 through 76.

127.    The FSAA, Minn. Stat. § 325F.67, states that "any person [or] corporation" who has "intent to sell … [a] service[] or anything offered by such person … to the public … for sale … or to induce the public in any manner to enter into any obligation relating thereto" and "makes, publishes, disseminates, circulates, or places before the public .. in this state" and "in a … publication, … letter, … or in any other way, an advertisement of any sort regarding [the] service … for use, consumption, purchase, or sale" is liable if the "advertisement contains any material assertion, representation, or statement of fact which is untrue, deceptive, or misleading."

128.    Section 325F.67 further provides that a violation is a misdemeanor and "any such act is declared to be a public nuisance and may be enjoined as such." It states that a "duty of strict observance and enforcement of this law and prosecution for any violation thereof is hereby expressly imposed upon the attorney general."

129.    The LDF Lenders' loans and credit products are "merchandise, … [a] service, or anything offered … directly or indirectly, to the public" within the meaning of

the statute. The loans are marketed and offered by "persons" or "corporations" within the meaning of the statute.

130.    Defendant (including his predecessors), in his official capacity for LDF Holdings LLC and in control of the LDF Lenders, engaged in violations of the FSAA because the LDF Lenders falsely represent and market their loans as legal credit products and fail to disclose that consumers have no legal obligation to pay the loan amounts because they are illegal and void under Minnesota law.

131.    Consumers were and are unlikely to know that applicable law renders these loans void or limited consumers' obligation to repay.

132.    The Minnesota Attorney General is authorized to bring civil actions to enforce the FSAA under the statute, section 8.31, and his *parens patriae* authority.

133.    Defendant (including his predecessors) in his official capacity decided, adopted, and/or ratified the policies of LDF Holdings LLC related to the operations of the LDF Lenders in violation of the FSAA.

134.    These violations are ongoing: as of July 2024, some LDF Lenders were continuing to deceptively market new loans to Minnesota consumers while all LDF Lenders continue to make representations concerning repayment from Minnesota consumers and engage in debt collection from Minnesota consumers on illegal loans based on the above misrepresentations. Minnesota and its residents have been and continue to be harmed by these violations of the FSAA.

135.    Because LDF Holdings LLC is owned by federal recognized tribes and subject to sovereign immunity, the Attorney General brings this action for declaratory and

injunctive relief only—in order to secure effective prospective relief to stop continuing and future violations of the law. In recognizing these principles of sovereign immunity, however, the Attorney General reserves the right to contest whether Waaswaaganing is the de facto lender concerning such loans and to pursue other relief against non-tribal entities or persons that have participated in the unlawful lending described herein.

## COUNT VII
### Unfair and Deceptive Acts or Practices in Violation of the Federal Consumer Financial Protection Act
### 12 U.S.C. §§ 5531 and 5536

136.    The Attorney General incorporates by reference paragraphs 1 through 76.

137.    In enacting the CFPA, Congress made it illegal for any "covered person" to engage in "any unfair, deceptive or abusive act or practice." 12 U.S.C. §§ 5531, 5536.

138.    Defendant is a "covered person," which includes an "individual" or a "company, corporation, … or other entity" that is "engaged in offering or providing a consumer financial product or service." 12 U.S.C. § 5481. Defendant, in his official capacity for LDF Holdings LLC and in control of the LDF Lenders, is engaged in offering and providing short-term loans to Minnesota consumers.

139.    **Deceptiveness**. An act or practice is deceptive when it misleads or is likely to mislead the consumer; the consumer's interpretation is reasonable under the circumstances; and the misleading act or practice is material.

140.    Defendant (including his predecessors), in his official capacity for LDF Holdings LLC and in control of the LDF Lenders, engaged in deceptive acts and practices because:

a. LDF Holdings represented that consumers had a legal obligation to repay loan amounts that in fact did not exist because the underlying loan contracts violate Minnesota law and thus were void, falsely told consumers that Minnesota law did not apply to their loans, sent correspondence to Minnesota consumers demanding payment and claiming that repayment demands were enforceable when they were not, demanded repayment on defaulted loans that were void, and failed to disclose to consumers that they had no legal obligation to pay the loan amounts because they were illegal and void under state law.

b. Consumers' interpretation of the misrepresentations—i.e., the false notion that the LDF Lender loans were valid and enforceable and that Minnesota law did not apply to the loans—is reasonable because, among other circumstances related to the transactions, the interpretation is what was literally and explicitly stated in form contracts with Minnesota consumers. Further, consumers were unlikely to know that applicable law rendered the loans void or limited consumers' obligation to repay them, and thus consumers were unlikely to avoid paying illegal amounts to which LDF Holdings LLC was not entitled.

c. The subject of the misleading statements—whether a loan is legal and a consumer must repay the debt—is material.

141. **Unfairness**. An unfair act or practice under the CFPA is one that causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers and the substantial injury is not outweighed by countervailing benefits to consumers or to competition. 12 U.S.C. § 5531(c).

142. Defendant (including his predecessors), in his official capacity for LDF Holdings LLC and in control of the LDF Lenders, engaged in unfair acts or practices because consumers were and are likely to pay substantial amounts to LDF Holdings LLC for which LDF Holdings LLC is not entitled and based on LDF Holdings LLC's demands for repayment, causing ongoing monetary loss and distress. This harm was not reasonably avoidable because consumers were highly unlikely to know that applicable law rendered

the LDF Lender loans void or limited consumers' obligation to repay them; consumers were thus unlikely to avoid paying illegal amounts to which LDF Holdings LLC was not entitled. Nor is the injury outweighed by countervailing benefits to consumers or competition; indeed, there is no benefit, to individual consumers or to the public, in usurious and predatory loans that harm financially distressed consumers and violate basic consumer-protection laws.

143.    Defendant (including his predecessors) in his official capacity manages and controls LDF Holdings LLC and the LDF Lenders. Defendant decided, adopted, or ratified the policies of the LDF Lenders related to the unlawful lending operations and deception outlined herein.

144.    These violations are ongoing: as of July 2024, some LDF Lenders were continuing to deceptively market new loans to Minnesota consumers while all LDF Lenders continue to make representations concerning repayment from Minnesota consumers and engage in debt collection from Minnesota consumers on illegal loans based on the above misrepresentations.

145.    Because LDF Holdings LLC is owned by Waaswaaganing, a federally recognized tribe subject to sovereign immunity, the Attorney General brings this action for declaratory and injunctive relief only to secure effective prospective relief to stop continuing and future violations of the law. In recognizing these principles of sovereign immunity, however, the Attorney General reserves the right to contest whether Waaswaaganing is the de facto lender concerning such loans and to pursue other relief

against non-tribal entities or persons that have participated in the unlawful lending described herein.

146.    Before initiating this action, the Attorney General sent a complete copy of this Complaint and written notice describing this action to the Consumer Financial Protection Bureau in accordance with 12 U.S.C. § 5552(b)(1).

## PRAYER FOR RELIEF

The Attorney General respectfully requests that this Court enter an order granting the following relief:

1.    Declaring that the marketing, offering, issuing, servicing, collection, and providing of loans by LDF Holdings LLC and through LDF Lenders as described above violates the above-described laws;

2.    Enjoining Defendant, along with any other officers, agents, servants, employees, and attorneys of LDF Holdings LLC and the LDF Lenders, and any other persons in active concert or participation with them and with notice of an injunctive order, from marketing, offering, issuing, servicing, collecting on, or otherwise participating in violations concerning the above-described unlawful lending;

3.    Ordering that Defendant engage in monitoring, reporting, or other appropriate measures to ensure compliance with the above remedies;

4.    Granting such further relief as provided by law or as the Court deems appropriate and just.

Dated:  November 26, 2024

Respectfully submitted,

KEITH ELLISON
Attorney General
State of Minnesota

JESSICA WHITNEY
Deputy Attorney General

JASON PLEGGENKUHLE
Assistant Attorney General

*/s/ Adam Welle*
ADAM WELLE
Assistant Attorney General
MN Atty. Reg. No. 0389951

BENNETT HARTZ
Assistant Attorney General
MN Atty. Reg. No. 0393136

adam.welle@ag.state.mn.us
bennett.hartz@ag.state.mn.us
445 Minnesota Street, Suite 1200
St. Paul, Minnesota 55101-2130
(651) 757-1425

*Attorneys for the State of Minnesota*